**STATE of Tennessee**

v.

**Bobby Gene GOODSON.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 19, 2001.

William A. Kennedy, Blountville, Tennessee, for the Appellant, Bobby Gene Goodson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Angele M. Gregory, Assistant Attorney General; and B. Todd Martin, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

The Appellant, Bobby Gene Goodson, appeals his conviction by a Sullivan County jury of driving on a revoked license, in violation of Tennessee Code Annotated § 55–50–504(a)(1) (1998). On appeal, Goodson challenges his conviction contending that: (1) the State is without authority to regulate his right to travel; (2) the trial court was without jurisdiction to try him; (3) he was not afforded a speedy trial; and (4) the evidence in the record is insufficient as a matter of law to sustain his conviction. After a review of the record, we find issues (1), (2), and (3) are without merit. With regard to issue (4), we find the indicted offense, driving on a revoked license, impermissibly varied from the proof at trial, which established the separate offense of driving on a suspended

license. Therefore, Goodson's conviction for driving on a revoked license is reversed.

## Factual Background

On July 23, 1999, the Appellant appeared at the Sullivan County Criminal Court for a scheduled court proceeding. As the Appellant was leaving the courthouse, he was observed by Court Officer Tim Duncan getting into his car and "pull[ing] out into the highway." Duncan, having "prior knowledge that Goodson did not have a valid Tennessee driver's license," informed dispatch of this fact. Officer Robert Dooley was then contacted and advised of the situation. Upon locating the described vehicle, the Appellant was then pulled over by the officer. When Officer Dooley approached the vehicle, the Appellant produced a photocopy of his Tennessee driver's license, and stated that he had a right to travel without a driver's license. Officer Dooley testified, he "ran the number which was on the—the photocopy, the Tennessee license number," and was advised that the Appellant's license had been suspended. The Appellant was then charged with driving on a suspended license. On September 8, 1999, the Appellant was indicted for driving on a revoked license. After a trial by jury, the Appellant was found guilty and was sentenced to six months unsupervised probation, to be served consecutively to other outstanding traffic offense convictions.

## ANALYSIS

### I. Right to Travel.

■ The Appellant first contends that he has a constitutional right to travel, and the State of Tennessee impermissibly interferes with that right by requiring licensure. At trial, the Appellant testified he was "traveling by right." In *State v. Booher*, 978 S.W.2d 953, 956 (Tenn.Crim.App.

1997), this court held, "our [S]tate legislature may properly within the scope of its police power enact reasonable regulations requiring licensing and registration of motor vehicles as it furthers the interests of public safety and welfare." The court reasoned,

> [T]he ability to drive a motor vehicle on a public highway is *not* a fundamental right. Instead, it is a revocable "privilege" that is granted upon compliance with statutory licensing procedures.

> State and local governments possess an inherent power, *i.e.* police power, to enact reasonable legislation for the health, safety, welfare, morals, or convenience of the public. Thus, our legislature, through its police power, may prescribe conditions under which the "privilege" of operating automobiles on public highways may be exercised.

*Id.* (citations omitted). We remain unpersuaded that the rationale of *Booher* should be rejected. Therefore, this issue is without merit.

### II. Lack of Jurisdiction.

■ Second, the Appellant asserts that "the trial court lacked jurisdiction over him." Specifically, the Appellant argues, in his Motion and Demand to Dismiss for Lack of Jurisdiction, that

> Bobby Gene Goodson being one of the holders of the inherent political power, Motion and Demand that case no. S43,-033 be dismissed for lack of constitutional jurisdiction. "We The People" did not give the STATE OF TENNESSEE, INC. any authority to make legislated color of law codes in violation of the Constitution of the United States of America of 1781 and the Constitution of Tennessee.

The Appellant cites no authority or principle of law which supports this argument.

In *Booher*, this court rejected the argument that an appellant "is exempt from the laws of this State because he has never consented to nor granted the State the authority to try him for criminal acts or omissions." *Id.* at 957. The Appellant, in the present case, was charged with driving on a revoked license, a class B misdemeanor. "The circuit court has exclusive original jurisdiction of all crimes and misdemeanors, whether at common law or by statute, unless expressly provided by statute or this Code." Tenn.Code Ann. § 16–10–102 (1994). The facts are abundantly clear that the Sullivan County Criminal Court had both subject matter jurisdiction and personal jurisdiction to try the Appellant for the commission of the charged offense. The Appellant is not exempt from the laws of this state.

### III. Speedy Trial.

■ The Appellant next argues that he was not afforded a speedy trial because "it took almost a full year to get a minor traffic offense to trial." The Appellant was arrested on July 23, 1999, and his trial was held on July 12, 2000. The delay was just less than one year. A mere lapse of time, absent more, does not constitute a denial of the right to a speedy trial. *State v. Bishop*, 493 S.W.2d 81, 84 (Tenn.1973); *State v. Ensley*, 956 S.W.2d 502, 509 (Tenn.Crim.App.1996), *perm. to appeal denied*, (Tenn.1997). The Appellant asserts that he was prejudiced because his reputation was impugned as a result of the delay. The record is void, however, as to any proof of damage to the Appellant's reputation. Furthermore, we find that a large portion of the delay was caused by the Appellant.

■ In *Bishop*, 493 S.W.2d at 84, our supreme court adopted the *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, (1972), four-part balancing test to determine whether the right to a speedy trial has been abridged. If the length of the delay is not presumptively prejudicial, the other balancing factors need not be considered. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. A delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, n. 1, 120 L.Ed.2d 520 (1992). Because we find the alleged delay was not presumptively prejudicial, we conclude the Appellant was not denied his right to a speedy trial.

### IV. Proof of the Convicted Offense.

■ Finally, the Appellant contends the evidence was insufficient to establish that he was driving on a revoked license. Although the Appellant's challenge to his conviction is raised within a "sufficiency" argument, it is clear that this argument is predicated upon grounds that the proof at trial was insufficient because it varied fatally from the offense alleged in the indictment. On appeal, the Appellant argues,

> [T]he certified driving history presented at trial by the State indicates that the defendant was not "revoked," but was "suspended." ... The statute clearly sets out three separate offenses by making it a criminal offense to operate a motor vehicle when a person's privilege to do so is "cancelled, suspended or revoked." ... The use of the conjunction "or" makes it clear that the State has a choice to make in indicting a defendant. In the instant case, the State placed into evidence proof that the defendant committed the offense of driving on a suspended license, but no evidence that the defendant committed the offense of driving on a revoked license.

In response, the State concedes "that it is difficult to tell whether Tenn.Code Ann.

§ 55–50–504 intends to distinguish the three offenses," nonetheless, it argues that the three terms, *i.e.*, cancelled, suspended or revoked, are interchangeable.

In order to satisfy constitutional requirements, an indictment must provide the defendant with notice of the offense charged, provide the court with an adequate ground upon which a judgment may be entered, and provide the defendant with protection against double jeopardy.[1] *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn.1991). Inherent within these functions is the due process guarantee that the indictment provide the accused a fair opportunity to defend against the judgment. *State v. Trusty*, 919 S.W.2d 305, 309 (Tenn.1996), *overruled on other grounds, State v. Jett*, No. 01C01–9707–CR–00236, 1998 WL 598524 (Tenn.Crim.App. at Nashville, Sept. 10, 1998); *see also State v. Marshall*, 870 S.W.2d 532, 537 (Tenn.Crim.App.1993).

> Having the right to be informed of the criminal charge that he or she is to meet at trial, the accused cannot be tried for or convicted of an offense not charged in the indictment or information. Put simply, not only must the government prove the crime it charges, it must charge the crime it proves.

41 Am.Jur. 2d *Indictments and Informations* § 258 (1995); *see also State v. Cleveland*, 959 S.W.2d 548, 552 (Tenn.1997) (a defendant cannot legally be convicted of an offense which is not charged in the indictment or which is not a lesser offense embraced in the indictment). Moreover, after an indictment has been returned, its charge may not be broadened or changed except by action of the grand jury. U.S. Const. amend. V; Tenn. Const. art. I, sec. 14; *United States v. Miller*, 471 U.S.

130, 148, 105 S.Ct. 1811, 1820, 85 L.Ed.2d 99 (1985); *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). In further explanation of *Stirone*, the court in *U.S. v. Adams*, 778 F.2d 1117, 1123 (5th Cir.1985), observed:

> *Stirone* requires that courts distinguish between constructive amendments of the indictment, which are reversible *per se*, and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged.... In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment.... If, on the other hand, the variation between *proof* and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant."

The Appellant was indicted for and convicted of driving on a revoked license in violation of § 55–50–504(a)(1) (1998). Section 55–50–504, makes it a crime for any person to drive a motor vehicle on any public highway of this State at a time when the person's privilege to do so is cancelled, suspended, or revoked. This offense may be committed by three different means. Moreover, we find that driving on a(1) cancelled, (2) suspended, or (3) revoked license constitutes separate and distinct offenses.[2] The Appellant was in-

---

1. But for a statute of limitations bar, double jeopardy principles would not prohibit subsequent prosecution of the Appellant for driving on a *suspended* license because the Appellant was never charged with or tried for driving on a *suspended* license.

2. Tennessee Code Annotated § 40–13–206 (1997), permits an indictment to allege alter-

dicted for driving on a *revoked* license. However, the proof at trial showed that the Appellant was driving on a *suspended* license for "failure to file insurance after conviction." *See* Tenn.Code Ann. § 55–12–115 (1998).[3]

 Despite the fact that the words "suspended" and "revoked" are often used interchangeably, they have different meanings as provided in Tennessee Code Annotated § 55–50–102(42), (47) (1998):

> "Revocation of driver license" means the termination by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the department after the expiration of at least one (1) year after date of revocation.

> "Suspension of driver license" means the temporary withdrawal by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which temporary withdrawal shall be for a period specifically designated by the department.

*See also State v. Swan,* No. M2000–00539–CCA–R3–CD, 2001 WL 430601 (Tenn. Crim.App. at Nashville, Apr. 27, 2001). The proof introduced at trial regarding the

Appellant's suspended driving status constituted a constructive amendment of the indictment by broadening the grounds for conviction. "The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." *Stirone,* 361 U.S. at 218–19, 80 S.Ct. at 273–74. For this reason, we conclude that the constructive amendment of the indictment infringed upon the Appellant's "right to have the grand jury make the charge," thus resulting in reversible error.

## CONCLUSION

We find that driving on a revoked license is a separate and distinct offense from that of driving on a suspended license. As such, we conclude that a constructive amendment of the indictment occurred because the jury was permitted to convict for an offense different from that which was charged or included within the charging instrument. For this reason, the Appellant's conviction for driving on a revoked license is reversed.

---

natively within the same count an offense, which can be committed by different forms, by different means, or with different intents. However, the indictment in the present case does not charge all three forms or means of committing the offense of driving on a revoked license. The State would have been authorized to prove any of the three forms or means, but this statute is not applicable be-

cause the State chose to proceed on the specific charge of driving on a *revoked* license.

3. At trial the Appellant acknowledged that the State sent him a form requesting proof of insurance and that he intentionally chose not to complete the form or return it to the State.