# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 11, 2002

## STATE OF TENNESSEE v. RICKY LAMONT BRIGMAN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-C-1369     Steve R. Dozier, Judge**

---

**No. M2002-00461-CCA-R3-CD - Filed June 17, 2003**

---

The Appellant, Ricky Lamont Brigman, was convicted by a Davidson County jury of three counts of rape of a child, one count of attempted rape of a child, two counts of aggravated sexual battery, three counts of rape, one count of attempted rape, one count of sexual battery, one count of attempted sexual battery, and one count of sexual exploitation involving six minor male victims.  For these convictions, he received an effective sentence of ninety-one years.  On appeal, Brigman challenges both his convictions and sentences upon the following grounds: (1) with respect to certain convictions, a material variance exists between the indictments and the convicting evidence; (2) the "cancellation" rule requires dismissal of his conviction for sexual battery; (3) the trial court provided improper jury instructions with regard to the "cancellation" rule and the requisite mental states; (4) the sentences are excessive due to the trial court's failure to apply mitigating factors at sentencing; and (5) the improper imposition of consecutive sentences.  After review, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA McGEE OGLE, JJ., joined.

Carrie Kersh-Gasaway, Clarksville, Tennessee, for the Appellant, Ricky Lamont Brigman.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Renee W. Turner, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

Beginning in the early 1990's, the Appellant served as a boxing coach at the Police Athletic League for the Nashville-Davidson County Metropolitan Police Department, first as a volunteer and later as a paid employee. Through his activities there, the Appellant came into contact with several young men involved in the boxing program. All the victims testified that the Appellant served not only as their coach, but also as a father figure and mentor to them, taking them on trips, hosting sleep-overs, and buying them presents.

In July 2000, two of the young men came forward with allegations of sexual abuse against the Appellant. During the course of the investigation, police learned that several other young men involved in the program had also been sexually abused by the Appellant. Following a police investigation, the Davidson County grand jury returned a sixteen-count indictment against the Appellant charging him with four counts of rape of a child, four counts of rape by fraud, one count of attempted rape by fraud, three counts of aggravated sexual battery, one count of attempted rape of a child, one count of sexual battery by an authority figure, one count of attempted sexual battery by an authority figure, and one count of sexual exploitation of a minor.

At the four-day trial beginning August 13, 2001, the State presented testimony from six of the victims. Victim B.W.[1] testified that during three separate sleepovers, when he was eleven and twelve years old, the Appellant approached him and asked if he wanted a woman to perform oral sex on him. After agreeing, the victim was blindfolded and oral sex was performed. He neither saw nor heard a woman in the room. Victim J.W. testified that, when he was thirteen, oral sex was performed on him during the "blindfold game." J.W. also testified that, on other occasions, the Appellant had offered him money if he would show him his penis. J.W. further stated that the Appellant had shown him pornographic materials on his computer.

Victim R.J. testified that the Appellant had performed oral sex on him on two occasions, once while blindfolded and once while not. On a separate occasion, when he was lying on the Appellant's bed, the Appellant pulled down the victim's underwear and attempted to "stick" his erect penis into the victim's "butt." He further testified that the Appellant had asked the victim to perform oral sex on him, and the Appellant had shown him pornographic materials on the computer. R.J. testified that these incidents all occurred while he was eleven years old. He also testified to two incidents which occurred when he was ten years old. The first incident involved the Appellant rubbing the victim's penis. The second incident occurred when the Appellant attempted to have the victim perform oral sex on him by making the statement "go down on it" and making hand gestures.

---

[1]In order to protect the identity of minor victims of sexual abuse, it is the policy of this court to refer to the victims by their initials. *State v. Schimpf*, 782 S.W.2d 186, 188 n. 1 (Tenn. Crim. App. 1989).

Victim B.B. testified that the Appellant tried to initiate sexual relations with him during a sleep-over at the Appellant's home. The Appellant turned around, dropped his pants, and told the victim "to pretend he was a girl." The victim refused "because [the Appellant was] my boxing coach and I don't do things like that." B.B. also testified that, on a separate occasion at the Appellant's house, the Appellant grabbed his penis and said "you've got enough."

Victim J.O. testified that when he was thirteen, he participated in the blindfold game and received oral sex. He testified that during oral sex, he felt whiskers. He also stated that the Appellant had shown him pornographic movies. Victim M.T., who lived with the Appellant for a year when he was fifteen years old, testified that he had also participated in the blindfold game. On two separate occasions, when the victim was thirteen, he was blindfolded and oral sex was performed on him.

All the victims testified that they would not have consented to participate in the blindfold game had they known it was not a woman performing oral sex on them. Testimony was consistent among the victims that the Appellant told them the blindfold was necessary to protect the woman from a jealous boyfriend.

Detective Imhof testified that, during the investigation, victims B.W. and J.W. were equipped with a wireless body transmitter, which permitted the police to monitor and record a conversation between the two victims and the Appellant. After being confronted with various allegations of sexual assaults, including the "blindfold game" incidents, the Appellant did not deny any of the allegations and explained, "I'm sorry for anything I might have done to you guys. I've never meant to hurt anybody, never meant to do anything to anybody." The Appellant was subsequently interviewed by police and admitted that he, not a woman, performed the acts of oral sex on the young men. He also admitted to the other sexual acts described by the victims, with the exception of the acts alleged by victim R.J. In a written statement, the Appellant explained that he had performed oral sex on the young men "for the purpose of providing a safe experience for some of the boys."

Count 4 of the indictment, rape of a child, was dismissed by the State prior to submission to the jury because of a lack of supporting testimony. The jury returned guilty verdicts on all other counts with the exception of one count of rape by fraud. Thus, the Appellant was convicted of three counts of rape of a child, one count of attempted rape of a child, two counts of aggravated sexual battery, three counts of rape, one count of attempted rape, one count of sexual battery, one count of attempted sexual battery, and one count of sexual exploitation.

A sentencing hearing was held on October 10, 2001, during which proof was presented that the Appellant had previously been investigated for similar conduct with other minor boys in 1990. In addition, T.S. presented a video which showed several minors, including himself, engaged in sexual activity. He testified that the Appellant had been present during the filming of the video and served as a director of sorts. The Appellant was subsequently sentenced to an effective sentence of

ninety-one years.[2] The Appellant's motions for judgment of acquittal and new trial were denied, and this appeal followed.

## Analysis

### I. Material Variance

The Appellant asserts that the trial court erred in denying his pretrial motion for dismissal of certain counts of the indictment and motion for judgments of acquittal because of a fatal variance between the respective counts and the proof presented at trial. With regard to the issue of a variation between the charging instrument and the proof:

> It is a rule of universal recognition that the allegations and the proof must correspond. The requirement that the allegations in the indictment and the proof at trial correspond serves two purposes: it insures that [a] defendant is properly notified of the charges so that he may present a defense, and it protects [the] accused against the possibility of another prosecution for the same offense. . . .[3] If in some matter essential to the charge there is a discrepancy between the averments of the indictment and the proof, there is a variance. . . . However, not all variances are fatal. The pivotal inquiry is whether there has been a variance in proof, which affects the substantial rights of [the] accused. . . . [A] variance is not fatal unless [the] accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be, or unless the variance misleads [the] defendant in the preparation of his defense and subjects him to the likelihood of another prosecution for the same offense.[4] . . . [A] variance will not be treated as material where the allegations and the proof substantially correspond.[5] To be material, the variance must go to the extent of showing that the offense proved is not the offense charged.

42 C.J.S. *Indictments and Informations* § 206 (1991)(footnotes added). Variations between indictment and proof are evaluated under the harmless error doctrine. *State v. Bobby Gene Goodson*, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001).

---

[2] The ninety-one year sentence is composed of: twenty-four years each for counts 1-3 for rape of a child, five years for count 5 for attempted rape by fraud, eleven years each for counts 6-7 for aggravated sexual battery, ten years for count 8 attempted rape of a child, eleven years each for counts 9-11 for rape by fraud, two years for count 13 for sexual battery, three years for count 14 for aggravated sexual battery by an authority figure, and two years for count 15 sexual exploitation. Counts 1, 3, 5, 6, 10, 11, 14, and 15 were ordered to be served consecutively, with all others to be served concurrently.

[3] *State v. Hammonds*, 30 S.W.3d 294, 299 (Tenn. 2000).

[4] *See State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984) (holding that a variance is not fatal unless it is both material and prejudicial).

[5] *See State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993).

**A.  Material Variance as to manner in which offense was committed.**

The Appellant contends that guilty verdicts returned under counts 1, 2, 3, 5, 10, 11, and 12 should be dismissed because there is a fatal variance with regard to the manner these offenses were alleged  in the indictment counts and the proof presented at trial.  The relevant portions of the challenged counts are as follows:

> Counts 1-3: . . . [the Appellant] did intentionally, knowingly, or recklessly engage in unlawful sexual penetration of [the victim], a child of less than thirteen (13) years of age, in violation of Tennessee Code Annotated § 39-13-522. . .

> Counts 5, 11-12: . . . [the Appellant] did attempt to intentionally, knowingly, or recklessly engage in unlawful sexual penetration of [the victim], and the sexual penetration was accomplished by fraud in violation of T.C.A. 39-13-503.

> Count 10: . . . [the Appellant] did attempt to intentionally engage in unlawful sexual penetration of [the victim], in violation of T.C.A. 39-12-101.

The Appellant argues that though each of the above counts aver that the Appellant unlawfully sexually penetrated the named victim, the "evidence was that the alleged victims penetrated the Defendant."  We find this argument without merit.

First, we note that, in six of the seven counts challenged, a citation to the sexual offense statute alleged to have been violated is referenced.  Those statutes are defined as follows:

> Rape of a child is the unlawful sexual penetration of a victim by the defendant <u>or</u> the defendant by the victim, if such victim is less than thirteen (13) years of age.

Tenn. Code Ann. § 39-13-522(a).  (emphasis added).

Rape by fraud is defined by Tennessee Code Annotated § 39-13-503 (a)(4) as:

> (a) Rape is the unlawful sexual penetration of a victim by the defendant <u>or of the defendant by the victim</u> accompanied by any of the following circumstances: . . .

> > (4) the sexual penetration is accomplished by fraud.

(emphasis added).

Moreover, Tennessee Code Annotated § 39-13-501(7) defines "sexual penetration" to include fellatio.  Of equal importance is the fact that the Appellant requested and received a bill of particulars, which referenced each count, set forth the age of the victim, and explained the manner

and means by which the Appellant allegedly committed the respective offense. Although a bill of particulars is not a part of the indictment, a court may rely on the particularization of defendant's alleged wrongful behavior supplied by a bill. *U.S. v. Nelson*, 486 F. Supp. 464, 495 (W.D. Mich. 1980). In view of the information provided by the bill of particulars and the statutory definition of sexual penetration, we conclude that the Appellant was apprised of the accusations against him, was not misled in the preparation of his defense, and was protected from another prosecution for the same offenses. This issue is without merit.

### B. Material Variance - Time of Offense.

The Appellant was convicted under count 6 the indictment for the aggravated sexual battery of victim, R.J., when the victim was eleven years old. Count 6 charged that, between the "7th day of March 1999 and the 7th day of March 2000," the Appellant "did engage in unlawful sexual conduct with [R.J.] (DOB 3/07/88)." The Appellant asserts that a variance exists between the indictment and the proof presented at trial "because the alleged conduct upon which the conviction is based occurred, according to the testimony of the alleged victim, outside the time frame in the indictment." As such, he argues that the variance is fatal because it fails to guarantee him protection from future prosecution for this same conduct, thus, violating double jeopardy principles. The record reflects, however, that the Appellant failed to raise this issue in his motion for new trial. Therefore, the issue is waived. Tenn. R. App. P. 3(e). Moreover, assuming the issue had been properly preserved, the Appellant would not be entitled to relief based on the reasons articulated below concerning count 9.

The Appellant was convicted under count 9 of attempted rape of a child. The indictment alleges that "between the 7th day of March 1999 and the 1st day of March 2000," the Appellant did attempt to sexually penetrate R.J. "(DOB 3/7/88), a child less than thirteen years of age." These allegations would place the victim's age at eleven when the crime occurred; however, at trial, the victim related that the events alleged in count 9 occurred when he was ten years old. The State responds that the judgment of conviction is valid because the indictment provided the Appellant with notice of the offense charged, provided the court with an adequate ground upon which a judgment may be entered, and provided the Appellant with protection against double jeopardy. *State v. Lemacks*, 996 S.W.2d 166, 172 (Tenn. 1999). We agree.

The rule in Tennessee is well established that "the time at which an offense was committed need not be stated in the indictment . . . unless the time is a material ingredient of the offense." Tenn. Code Ann. § 40-13-207. Indeed, it is only necessary that the evidence prove that the offense occurred prior to the return of the indictment. *State v. Anderson*, 748 S.W.2d 201, 203 (Tenn. Crim. App. 1985). It has also been recognized in Tennessee that, in most child sex abuse cases, the State is unable to offer the specific date when an alleged offense occurred. *State v Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991). When the timing of the incident is not an essential element of the charge, a conviction may be affirmed if it appears that the defense of the accused was not hampered by the lack of specificity of the charging instruments. *Id*. at 742. It is not reversible error when a defendant

is sufficiently aware of the charge being levied against him and is able to adequately prepare for trial. *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984).

At the Appellant's motion for new trial, the trial court denied relief on this ground concluding that, even if a variance existed, no substantial right of the Appellant would have been affected because the bill of particulars adequately informed the Appellant of the charges levied against him. We agree. Further, the State filed an amendment to the original bill of particulars regarding these counts, which provided even more details. We find that the Appellant was in no way prejudiced by the wording of the indictment. This issue is without merit.

## II. Tennessee Cancellation Rule

The Appellant was convicted under count 13 of sexual battery against victim B.B. He asserts that he is entitled to a judgment of acquittal for this conviction because Tennessee's cancellation rule negated the testimony of victim B.B. In support of this argument, the Appellant offers the following colloquy between the prosecutor and B.B.:

> Q.	Did there ever come a time when Mr. Brigman touched you in your genital regions?
>
> A.	No.
>
> Q.	Sure about that?
>
> A.	Correct.

The victim was then shown a prior statement he had given to police regarding the incident. Following review of his statements, the victim testified as follows:

> Q:	Tell us where you were when that happened?
>
> A:	I was at his house and he just grabbed my penis, you know, and he was like, 'ok, if I had a woman over here' –he was like, he was just telling me, you know, 'ain't no' – ' nothing you saying about your penis, what not' said 'you got enough to work with'.

The Appellant cites *State v. Matthews*, 888 S.W.2d 446 (Tenn. Crim. App. 1993), for the proposition that "contradictory statements by a witness in connection with the same fact cancel each other out." *Id.* at 449. He argues that this rule negates B.B.'s testimony and, without his testimony, the State's case fails.

It is true that in Tennessee, contradictory statements by a witness in connection with the same fact cancel each other out. *Matthews*, 888 S.W.2d at 449; *Taylor v. Nashville Banner Pub. Co.*, 573

S.W.2d 476, 482 (Tenn. Ct. App. 1978). This rule only applies, however, when the inconsistency in the witness' testimony is unexplained and when neither version of the testimony is corroborated by other evidence. *Matthews*, 888 S.W.2d at 450 (citing *Taylor*, 573 S.W.2d at 483).

In the order overruling the Appellant's motion for new trial, the trial court found that the cancellation rule was not applicable from these facts, concluding that the jury chose to accredit the victim's testimony that the Appellant touched his genitals. The trial court also observed that the victim had been subjected to a thorough cross-examination by defense counsel on the issue. We agree that the rule is inapplicable because we find that the victim's testimony about the occurrence of the event was corroborated by other evidence presented at trial. In addition to B.B.'s earlier statement to the police, the jury heard the testimony of Detective Imhof, stating that the Appellant had himself admitted to the acts against the victim. The record demonstrates that there is sufficient evidence from which a rational trier of fact could conclude that sexual contact occurred. Thus, the issue is without merit.

### III. Jury Instructions

The Appellant argues that the trial court erred in (1) failing to properly instruct the jury with regard to the culpable mental states for each of the indicted offenses, and (2) denying the Appellant's special request for an instruction regarding the cancellation rule. We are precluded from reviewing these issues upon their merit because the Appellant failed to include either the trial court's jury instructions or his requested instruction on the cancellation rule. Rule 30, Tennessee Rules of Criminal Procedure, provides that special requests for jury instructions be filed in writing. A trial court will not be placed in error where a requested special instruction was not presented in writing. *State v. Mackay*, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982). Moreover, it is the duty of the Appellant to prepare a complete and accurate record on appeal. Tenn. R. App. 23(b). Failure to do so results in waiver of the issue. *Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

Notwithstanding default of the issue, we are constrained to note that with regard to the mental state assertion, the Appellant simply states in conclusory terms that error resulted from the instruction because (1) it lowered the burden of proof, and (2) there is no assurance of jury unanimity in their selection of the requisite mental state. This case involves thirteen convictions with multiple mental states for most offenses charged. We are presented no argument or analysis as to how the burden of proof was lowered, which mental states were improperly charged with respect to specific offenses, or whether jury unanimity is, in fact, required. Indeed, the general rule appears to be that jury unanimity is not required. *See e.g., State v. Russell*, 733 P.2d 162, 165-69 (Utah 1987) (holding, with citations to other jurisdictions with similar holdings, that a jury does not have to be unanimous in deciding which of the three culpable mental states it finds in convicting of murder). Also, we agree with the State that the Appellant's reliance upon *State v. Keith T. Dupree*, No. W1999-01019-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 30, 2001) is misplaced, as this case is fact specific to a conviction for murder.

## IV. Sentencing

The Appellant contends that the sentences imposed by the trial court were excessive because of the trial court's failure to apply applicable mitigating evidence and because of the imposition of consecutive sentencing. When an accused challenges the length, range, or manner of sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. The burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness.

The Appellant was sentenced to an effective ninety-one year sentence in the Department of Correction. The trial court found three enhancing factors applicable to the sentence: (1) The defendant had a previous history of criminal conduct in addition to that necessary to establish the range; (2) The defendant committed the crime in order to satisfy his desire for pleasure or excitement; and (3) The defendant abused a position of public or private trust. Tenn. Code Ann. § 40-35-114(2)(8)(16). The Appellant does not challenge the application of these factors, and we agree that the record adequately supports the application of each. After review of the record, we find that the trial court correctly applied the sentencing principles; thus, the presumption of correctness applies.

### A. Failure to Apply Mitigation Evidence

The Appellant contends that the trial court erred by failing to consider in mitigation that the Appellant had no history of prior criminal convictions and that he had provided support for his family.

The Appellant is correct in his assertion that a lack of criminal history can be considered as an appropriate mitigating factor. *State v. Kelley*, 34 S.W.3d 471, 483 (Tenn. Crim. App. 2000). While it is true that the Appellant has no prior convictions, the record before us is rife with instances of prior criminal behavior. We find it inconsistent to reward a defendant at sentencing for a lack of a criminal history simply because the Appellant's conduct escaped indictment and conviction.

In addition, we find the fact that the Appellant provided support for his mother and nephew to be inapplicable mitigating proof under the facts of this case. *State v. McKnight*, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994). Again, we find it inconsistent to permit a defendant to perpetrate repugnant sexual offenses against minor victims and at the same time seek credit for the support of others. Accordingly, we find this issue without merit.

## B. Consecutive Sentencing

The Appellant asserts that it was error for the trial court to order consecutive sentencing for eight of his thirteen convictions. Consecutive sentences were imposed for: (1) count 1, rape of a child; (2) count 3, rape of a child; (3) count 5, attempted rape by fraud; (4) count 6, aggravated sexual battery; (5) count 10, rape by fraud; (6) count 11, rape by fraud; (7) count 14, aggravated sexual battery by an authority figure; and (8) count 15, sexual exploitation. Specifically, the Appellant argues that: (1) there was no basis to support findings that it was necessary to protect the public; (2) the trial court based his decision on considerations not provided by the applicable statutes; and (3) the aggregate sentence is not reasonably related to the severity of the offenses. Consecutive sentencing is controlled, in part, by Tennessee Code Annotated § 40-35-115. Under this statute, a trial court may order a defendant to serve consecutive sentences where the proof establishes by a preponderance of the evidence that:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical, and mental damage to the victim or victims[.]

Tenn. Code Ann. § 40-35–115(b)(5).

The following findings by the trial court with regard to consecutive sentences are noted:

> . . . Mr. Brigman would fall under, and can be considered under, the factor about two or more statutory offenses involving the sexual abuse of a minor. And there are a number of factors that you have to consider, if you apply that particular statutory consecutive sentencing, those being the relationship between the Defendant and the minors, the time span under which the abuse occurs, the nature and the scope of the abuse, and any mental or physical damage to the victims. . . .

> . . . [W]hen you look at that statute and those factors, consider again the relationship between the Defendant and the minors, I go back to what I've said previously, I mean, "You're my coach." "How could you be doing this?" "I looked up to you." "I was only nine." "I was only ten." "I was only twelve." "Why did you do this?" would probably be what they would ask.

And the time span, which the Court's heard proof about, now here within these Indictments, the thirteen counts he was convicted of span a years of seven (sic) - - approximately seven years.

Now we've heard proof that more than likely - - although I don't - - can't assume that it went on from nineteen-ninety to nineteen-ninety-three, but at least it was going on in nineteen-ninety with another individual. So, we have ten years of abuse.

And I have no doubt it would continue to be going on, if some of these boys hadn't been brave enough to tell their pastor or tell the other boys and parents; and one thing leads to another, and then Detective Imhof gets involved.

In terms of the nature and scope of the abuse, I mean, I've touched on that some already. But there's no question in the Court's mind that this Defendant groomed, over a number of years, at least six or seven individuals for this specific purpose.

I mean, he'd buy them clothes, take them out, buy them food, have sleep-overs, take them to Florida. And we've seen what happens on those trips; he shows them movies involving women, children, animals, oral sex, attempted anal sex. . . . [T]here is nothing normal about this particular case or Mr. Brigman.

In fashioning a sentence that the law mandates has to relate to the severity of the offenses, I think the Court must and will impose some consecutive sentencing not only to punish Mr. Brigman because of these factors that I've just mentioned, but also protect the public from future activity that he may think he might want to perform.

It is clear from review of the trial court's findings that the court properly considered all relevant factors in determining the appropriateness of consecutive sentencing. The Appellant was found guilty of thirteen sexual offenses involving six minors with whom he shared a close relationship. He clearly abused a position of authority against these minor victims, resulting in a course of conduct that spanned a minimum of seven years. The record supports the trial court's findings that consecutive sentences were necessary to protect the public from the Appellant as these offenses would have continued unabated without intervention. Moreover, the proof supports the finding that the aggregate sentence was reasonably related to the severity of the offenses. Further, we find the trial court's ruling prudent in imposing partial consecutive sentences, and in fashioning consecutive sentences so as to consider each of the victims of these crimes. Accordingly, we find the imposition of consecutive sentences as ordered by the trial court proper.

## CONCLUSION

Based upon the foregoing, we find no reversible error arising from the conviction process or at sentencing. Accordingly, the judgments of conviction as entered by the trial court and the resulting sentences are affirmed.

_____
DAVID G. HAYES, JUDGE