# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 6, 2019 Session

## STATE OF TENNESSEE v. LEROY MYERS, JR.

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2014-B-1303   Steve R. Dozier, Judge**

_____

### No. M2015-01855-SC-R11-CD

_____

The defendant, Leroy Myers, Jr., was indicted for the aggravated assault of Sandra Custode, an inspector with the Department of Codes and Public Safety ("Metro Codes Department"), by intentionally or knowingly causing her to reasonably fear imminent bodily injury by use or display of a deadly weapon. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). Following a bench trial, he was convicted of felony reckless endangerment, which is not a lesser-included offense of aggravated assault as indicted in this case. Both the trial court and the Court of Criminal Appeals concluded that the defendant, through the actions of counsel, caused an effective amendment of the indictment. We granted the defendant's application for permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure to consider whether and under what circumstances the actions of counsel can rise to the level of causing an effective amendment to an indictment absent the clear consent of the defendant. Upon our review, we hold: (1) Tennessee Rule of Criminal Procedure 7(b)(1) sets forth the procedure for amending an indictment with a defendant's consent, and these mandates were not followed in this case; and (2) the actions of counsel amounted, at most, to mere acquiescence rather than an affirmative request for the trial court to consider felony reckless endangerment as a lesser offense. We reverse the judgment of the trial court and the Court of Criminal Appeals, vacate the judgment of conviction, and dismiss the case.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Conviction of Felony Reckless Endangerment Vacated and Dismissed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Thomas Jay Norman, Nashville, Tennessee, for the appellant, Leroy Myers, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Clark B. Thornton, Senior Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Jennifer Charles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The issue in this case is whether the proceedings in this bench trial constituted the defendant's effective consent to amend the indictment charging him with aggravated assault, a Class C felony, to include felony reckless endangerment, a Class E felony, which is not a lesser-included offense of aggravated assault as charged.

## I. Facts and Procedural History

Sandra Custode, the victim in this case, was employed as a property standards inspector with the Metro Codes Department in Nashville, Tennessee. Her job entailed inspecting properties about which people filed complaints involving debris on the property, dilapidated houses, or old cars being kept on the property. Ms. Custode had previously inspected the defendant's property due to a complaint that he had been operating an automobile repair shop in the garage of his home, which was located in a residential neighborhood. On March 13, 2014, she conducted a second inspection of the defendant's property to investigate whether the defendant had complied with her abatement letter.

Ms. Custode arrived in her clearly-marked government vehicle. Because this was the second visit about the complaint, she intended to take photographs as evidence of whether the defendant was in compliance with the directive to abate. As she was driving toward the defendant's property, Ms. Custode could clearly see several automobiles parked behind a fence in the yard and two automobiles in front of the garage. At the front of the defendant's house, she saw several people talking to him as he worked on one of the cars.

Ms. Custode parked her car in the right-of-way in front of the defendant's garage to take photographs because he had previously "ordered" her off of his property. For that reason, she did not venture onto his property but rather took photographs from her vehicle. The defendant saw Ms. Custode taking pictures and began "yelling" as he walked toward her car. When he arrived at Ms. Custode's car, the defendant called her names and cursed at her. He directed her to other properties in the area and suggested

- 2 -

that Ms. Custode go "get" them. Ms. Custode recalled, "He was pacing back and forth and just flailing his arms. He was screaming at the top of his voice. He was really angry. Spit was flying out of his mouth. He was just mad." She attempted to answer the defendant's questions from her vehicle, but he would not listen to her. The defendant suddenly stopped his tirade and "stomped off towards his garage" with his "fists clenched." Believing that the dialogue was over, Ms. Custode began to drive away. She looked in her rearview mirror and pulled onto the road. She then heard shots. Upon hearing the second shot, she turned, looked over her shoulder, and saw the defendant lowering a gun. Ms. Custode described the gun as a "long gun," "like a rifle." The defendant was about two feet outside of the garage, facing Ms. Custode, and two people were standing alongside him. One of the people, a female, was laughing. The defendant turned and walked into the garage.

Ms. Custode drove to Ivy Point Road, where she pulled over her vehicle to see if the defendant had followed her. She telephoned her employer, who advised her to call the police. The police instructed her to drive to the bottom of the hill on Ivy Point Road, and she complied. There, a police officer approached her and asked her to follow him to the defendant's house. She identified the defendant then remained there until she was instructed to drive to the police department to file a complaint.

Metropolitan Nashville Police ("Metro") Sergeant Lukas Merithew along with Officers Jason Dugley and Joshua Borumn arrived at the scene to investigate Ms. Custode's complaint. Officer Dugley found a Mossberg pump-action shotgun just inside the "primary entrance," leaning against a washing machine. He cleared the weapon, rendered it safe, and placed it in a patrol car as evidence. Neither he nor anyone else located spent shotgun shells, but he clarified that one must manually eject the shells from this type of weapon.

Officer Borumn sat inside his patrol car typing his report while the defendant was in the back seat. Officer Borumn heard the defendant say that he was shooting at chicken hawks that were trying to attack his chickens; however, the officer did not observe any chickens in the front yard. During the time at the defendant's residence, Sergeant Merithew did not see any chickens on the property. The sergeant said that because of the rural nature of the area, it was not unusual to hear a shotgun being fired. The defendant also mentioned that he had a "history" with Ms. Custode from "codes." In the arrest warrant, Officer Borumn wrote that the "[d]efendant admitted that he fired off a few rounds at some animals that just happened to be in the general vicinity of the victim."

During the course of the investigation, a young couple appeared at the defendant's residence. Officer Dugley characterized the couple as being "friendly" with the defendant. The female, Debra Mallory, testified at the bench trial that she had witnessed the altercation, that she heard what the defendant said to Ms. Custode, and that he neither cursed her nor threatened her. She recalled that Ms. Custode had "pulled down the road and . . . was away from the house" when the defendant responded to the commotion in the backyard and retrieved his gun. Although Ms. Mallory testified that the defendant fired the gun "once in the air and once in the backyard," she admitted that she did not actually see him shoot the gun. She said, "I didn't see him, no. I mean, I -- I was a little bit away from him, by -- seen him shoot up in the air, but I didn't see him." Ms. Mallory had given a statement to the State's investigator previously, in which she had stated that the defendant fired the gun because he was mad at Ms. Custode, who was taking pictures, but during the bench trial, she did not remember making that statement. She also denied having said in the statement that the defendant was firing at an animal, stating instead that he shot in the air and into the backyard, but not at an animal. The State's investigator testified in rebuttal that Ms. Mallory had previously stated that the defendant had fired his weapon because he was angry with the "codes lady."

Ms. Custode recalled that she felt "really scared" and "terrified" during the incident. She began crying and shaking. She feared that the defendant intended to follow her vehicle and shoot her. Ms. Custode described the defendant as having been "crazed mad" at her. He previously had cursed at her, and his attitude toward her became more aggressive with each visit. She was certain that the defendant was shooting at her because "maybe only five seconds went by from the time [she] last saw him and [she] started [her] car and he was stomping to the garage."

The defendant testified at the bench trial and said that he kept chickens in the backyard of his property. He kept several varieties, including bantams, which were very small. Hawks had flown down, grabbed bantams through the fence, and carried them away. He had lost twenty to twenty-five of those chickens within the six months prior to this incident. The problem was so pervasive that he kept a shotgun inside of the garage. Following the incident with Ms. Custode, during which the defendant admitted to having "words" and complaining to her, he said he observed a hawk flying "from the road . . . back towards [his] backyard." He grabbed the gun from his garage, walked outside, pointed the gun upward and toward the backyard, and fired twice. He said he did not see Ms. Custode at that time and had no idea how Ms. Custode could have seen him, positing that her testimony that he had retrieved a gun was a "lucky guess." Moreover, he asserted that Officer Borumn's testimony regarding the defendant's admission in the back of the patrol car was false.

- 4 -

Ms. Custode testified that she did not believe the defendant's assertion that he was merely shooting at a hawk that was attempting to attack his chickens. She recalled that his chickens were confined in an enclosed coop from which the chickens could not escape and hawks could not enter. She maintained, "[H]e was shooting because of me. Whether or not he shot at me, I don't know. But he shot because of me."

Ms. Custode had to return to the defendant's property at a later date because her job required her to do so, but she was still scared when she returned. Since the incident, the house in which the defendant lived had been torn down, but Ms. Custode was under the belief that he still resided in the area. A nearby residence had several vehicles parked in the yard, and Ms. Custode surmised that the defendant might have relocated there. Thus, she was afraid to knock on the door and speak with the owners because she feared it would be the defendant.

After the presentation of evidence, the State made its closing argument, followed by a closing argument by defense counsel. Counsel argued first that the evidence was insufficient because Ms. Custode did not testify that she feared "imminent bodily injury." Furthermore, he argued that the defendant was exercising his right to free speech via actions to express his anger at the government and not with the intent of causing Ms. Custode to be fearful of imminent bodily harm.

Counsel continued:

[T]he Court knows I'm sure that firing a shotgun into a tree can't be reckless endangerment. There is [sic] many opinions, Tennessee Supreme Court has talked about that, and I believe it's *State versus Payne*. And if firing a shotgun into a tree can't be reckless endangerment, a class E felony, I don't know how in the world we are going to elevate this to a class C felony?

. . . .

*State versus Shaw* also speaks to it -- simply firing a weapon does not amount -- tantamount to reckless endangerment. I mean, that's the problem I have, Your Honor please. If you fire a shotgun up into a tree, if you're not recklessly endangering somebody, how can you say that is an actual assault unless the person is in the tree?

Following closing arguments, the trial court explained that there were factors to consider before rendering a verdict, such as credibility issues and accuracy of the location of the initial confrontation between Ms. Custode and the defendant. The court also noted that defense counsel had "raised issues about, not in this direct discussion, but whether or not there might be less -- a lesser offense like reckless endangerment." The court encouraged defense counsel to submit the two cases to which he had referred during his closing argument, "in terms of imminent danger." The trial court then took the matter under advisement.

On June 30, 2015, the trial court entered an order finding the defendant not guilty of aggravated assault but guilty of reckless endangerment, stating:

> Here the [D]efendant did not merely shoot the gun into a tree. He fired the weapon twice in Ms. Custode's direction to scare her off of his property as she was leaving. Ms. Custode saw the [D]efendant lower the gun in her direction. Ms. Custode was present in the zone of danger, wherein a reasonable probability of danger existed. Therefore, the [D]efendant is guilty of reckless endangerment, a Class E Felony.

Thereafter, the defendant filed a motion for judgment of acquittal on the basis that felony reckless endangerment is not a lesser-included offense of aggravated assault. Following a hearing on the motion, the trial court entered an order denying the motion. In the order, the trial court noted:

> While the holding in [*State v.*] *Moore* [, 77 S.W.3d 132 (Tenn. 2002)] is binding on this Court, however, the emphasis is misplaced in this case because of the argument propounded by defense counsel at trial. In defense counsel's closing argument, he argued there was no assault. Referring to *State v. Payne*, 7 S.W.3d 25 (Tenn. 1999), he stated simply that firing a shotgun into a tree is not reckless endangerment, a Class E felony. Defense counsel further argued that the defendant's actions did not constitute reckless endangerment; therefore, it cannot be an assault "unless she was in the tree."

(footnote omitted). The trial court further noted that "a defendant's mere failure to object to a proposed jury instruction which includes an offense that is not a lesser[-] included offense, will likewise not constitute implicit consent to an amendment to the indictment."

Nonetheless, the trial court concluded that the defendant could not complain about the conviction because: 1) his counsel raised the issue of whether the conduct could be a lesser-included offense like reckless endangerment; 2) counsel did not object when the trial court stated that it would take the matter under advisement to consider lesser-included offenses like reckless endangerment; and 3) counsel submitted two cases, both involving reckless endangerment, for the court to consider. The court construed these actions of counsel to have been "an effective amendment to the indictment because the defendant actively sought to place it before the court on the uncharged offense."

The defendant appealed his conviction to the Court of Criminal Appeals. At the outset of the appellate proceedings, the defendant filed a "Notice of Designation of Transcript" in which he stated that he did not request a copy of the transcript of testimony from the bench trial but that he affirmatively requested a copy of the closing arguments. The Court of Criminal Appeals affirmed the defendant's conviction, attributing to the trial court a presumption of correctness regarding its recollection of the alleged conversation with the attorneys concerning the court's proposed consideration of the lesser offense of reckless endangerment. *State v. Myers*, No. M2015-01855-CCA-R3-CD, 2016 WL 6560014, at *5 (Tenn. Crim. App. Nov. 4, 2016) ("*Myers I*"). This Court, upon consideration of the defendant's first Rule 11 application for permission to appeal, Tenn. R. App. P. 11, granted the application, vacated the judgment of the Court of Criminal Appeals, and remanded the case for consideration on the merits upon supplementation of the record with the full transcript of the bench trial, *State v. Myers*, No. M2015-01855-R11-CD (Tenn. Sept. 22, 2017) (Order) (stating that "the Court of Criminal Appeals shall order the trial court clerk to supplement the record with the full transcript of the bench trial in this case, including the proceedings on May 28, 2015, and June 4, 2015"). On remand, the appellate court affirmed the judgment of the trial court, reiterating that

> the prior conversations seeking consideration of reckless endangerment, defense counsel's raising and referencing reckless endangerment again at closing argument, and defense counsel's submission of case law on reckless endangerment to aid the trial court in its determination all support the trial court's conclusion that the [d]efendant actively sought the trial court's consideration of reckless endangerment.

*State v. Myers*, No. M2015-01855-CCA-R3-CD, 2018 WL 1831128, at *4 (Tenn. Crim. App. Apr. 17, 2018) ("*Myers II*"). The Court of Criminal Appeals noted that these facts were compounded by defense counsel's failure to object to the trial court's remarks in its order that counsel had "raised issues . . . not in this direct discussion" about whether

reckless endangerment might be a lesser offense of aggravated assault." *Id.* This appeal follows.

## II. Analysis

Our consideration of this case requires us to distinguish between two different mechanisms of amending an indictment: actual amendment and effective amendment. We clarify the definitions of each principle to facilitate understanding of the analysis that follows.

Compliance with the mandates of Tennessee Rule of Criminal Procedure 7(b) results in an actual amendment to an indictment. *See* Tenn. R. Crim. P. 7(b). Effective consent to amend an indictment, or an effective amendment, occurs when a defendant *actively* seeks a jury instruction, or trial court consideration in a bench trial, on an otherwise invalid lesser offense. *See State v. Stokes*, 24 S.W.3d 303, 306-07 (Tenn. 2000).

### A. Standard of Review

Because this case requires an analysis of whether an indictment was properly amended and, if so, by what means, "it is a question of law; hence, our standard of review is de novo without a presumption of correctness given to the trial court's conclusions of law." *State v. Jackson*, 60 S.W.3d 738, 742 (Tenn. 2001).

### B. Notice Requirement – Indictments

Under both the United States and Tennessee Constitutions, "an accused has the right to be informed of the nature and cause of the accusation against him." *State v. Duncan*, 505 S.W.3d 480, 484 (Tenn. 2016); *see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."); Tenn. Const. art. I, § 9 ("[I]n all criminal prosecutions, the accused hath the right . . . to demand the nature and cause of the accusation against him . . . ."). An accused is informed of the nature of the charges through an indictment. For an indictment to be constitutional, it "must provide the defendant with notice of the offense charged, provide the court with an adequate ground upon which a judgment may be entered, and provide the defendant with protection against double jeopardy." *State v. Goodson,* 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001) (citing *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991)). Collectively, these

requirements operate to "provide the accused a fair opportunity to defendant against the judgment." *Id.* (citations omitted).

The indictment in this case charged the defendant with aggravated assault, to-wit: that the defendant "intentionally or knowingly did cause Sandra Custode to reasonably fear imminent bodily injury, and [the defendant] did use or display a deadly weapon . . . ." *See* Tenn. Code Ann. § 39-13-101(a)(2), -102(a)(1)(A)(iii). Accordingly, defendant was on notice that he would have to defend against the contentions that he intentionally or knowingly caused the victim to reasonably fear imminent bodily injury, *id.* § 39-13-101(a)(2), and that he used or displayed a deadly weapon, *id.* § 39-13-102(a)(1)(A)(iii).

## 1. Lesser-Included Offenses

Because an accused in a criminal prosecution has a right to fair and reasonable notice of the charges against which he must defend, "the accused may be convicted only of a crime [that] is raised by the indictment or [that] is a lesser-included offense thereof." *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001) (citing *Hagner v. United States*, 285 U.S. 427, 431 (1932)); *State v. Moore*, 77 S.W.3d 132, 134 (Tenn. 2002); *see also* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *State v. Howard*, 504 S.W.3d 260, 273 (Tenn. 2016) (holding that adoption of Tennessee Code Annotated section 40-18-110(f) did not abrogate any portion of the definition of lesser-included offenses contained in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), instead of, or in addition to, the rules of criminal procedure). The Tennessee Rules of Criminal Procedure define a lesser-included offense as one that is "necessarily included in the offense charged." Tenn. R. Crim. P. 31(d)(1)(A).

Embraced within the offense of aggravated assault by causing fear of imminent bodily injury, as charged in this case, is the lesser-included offense of simple assault, which dispenses with the element of using a deadly weapon but retains the *mens rea* of acting intentionally or knowingly. *See* Tenn. Code Ann. § 39-13-101(a)(2). Although lesser in felony grade, "reckless aggravated assault cannot be a lesser-included offense of aggravated assault based on knowingly . . . causing another to reasonably fear imminent bodily injury because . . . reckless aggravated assault requires an element that is not found in the charged offense—bodily injury." *State v. Goodwin*, 143 S.W.3d 771, 776 (Tenn. 2004).

In this case, however, the defendant was convicted of felony reckless endangerment as defined in Tennessee Code Annotated section 39-13-103(a), (b)(2): "A person commits an offense who recklessly engages in conduct that places or may place

another person in imminent danger of death or serious bodily injury . . . [and it is] committed with a deadly weapon . . . ." This Court has held "that when the offense of aggravated assault is charged as having been committed by causing [reasonable] fear of [imminent] bodily injury, felony reckless endangerment is not a lesser-included offense." *State v. Hatfield*, 130 S.W.3d 40, 42 (Tenn. 2004) (citing *Moore*, 77 S.W.3d at 135-36). In so holding, we reasoned:

> From an analysis of the statutory requirements of aggravated assault, we determine that the presence of danger is not an essential element of aggravated assault committed by placing another person in fear of imminent danger of death or serious bodily injury. Consequently, one can commit the offense of aggravated assault by placing another person in fear of danger even if there is no risk of danger. The same does not hold true for felony reckless endangerment. It logically follows that the danger produced during the commission of felony reckless endangerment produces a more serious harm or risk of harm than the fear of a non-existent danger that may be produced during the commission of aggravated assault . . . .

*Moore*, 77 S.W.3d at 135–36 (footnote omitted).

Accordingly, the defendant in this case was convicted of a criminal offense for which he was neither provided with notice via the indictment nor that was encompassed within the indictment as a lesser-included offense of the crime charged. Thus, we must next assess whether the indictment was properly amended at trial.

### 2. Amendment of Indictments

Because the defendant was convicted of an offense that was not embraced in the indictment, his conviction is unconstitutional unless the indictment was properly amended. The trial court found that while the charge of reckless endangerment was not included in the indictment, the actions of defense counsel modified the indictment through an "effective amendment."

Tennessee Rule of Criminal Procedure 7 sets forth the manner in which an indictment can be amended after jeopardy has attached:

(b)     Amending Indictments, Presentments, and Informations.

- 10 -

(1)     *With Defendant's Consent.  With* the defendant's consent, the court may amend an indictment, presentment, or information.[1]

(emphasis added).  For an indictment to be amended pursuant to Rule 7(b)(1), "an oral or written motion to amend [the indictment] should be made, and the defendant's oral or written consent to the motion must be clear from the record." *Stokes*, 24 S.W.3d at 307; *see* Tenn. Code Ann. § 40-18-110(e) ("When the defendant requests an instruction on a lesser- included offense, the judge may condition the instruction on the defendant's consent to an amendment to the indictment or presentment, with the consent of the district attorney general, so that if there is a conviction for the requested lesser offense the request shall constitute a waiver of any objection in the motion for new trial and on appeal . . . .").  It is undisputed that in this case defense counsel did not file a written motion or make a formal oral motion to amend the indictment.  Neither is it disputed that the record is devoid of the defendant's clear oral or written consent to amend the indictment.

If our inquiry were limited to whether the defendant was properly convicted upon the indicted offense of aggravated assault or an actual amendment thereto, our analysis would end here.  The defendant was charged with aggravated assault in a single-count indictment.  The indictment was never amended in accordance with our rules of criminal procedure.  *See* Tenn. R. Crim. P. 7(b).  He was convicted of felony reckless endangerment, an offense not embraced in the indictment.  This discrepancy between the conviction and the indictment left the defendant without the ability to effectively defend himself, as he could not possibly know to defend against a charge not brought in the indictment.  "[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960).  Yet, that is exactly what occurred here.

However, the trial court reasoned, and the State agreed, that the defendant caused an "effective" amendment to the indictment through the actions of counsel.  Tennessee has not considered whether and under what circumstances a defense attorney can cause an "effective amendment" to an indictment in a bench trial by other than affirmative means. Thus, we address this issue as a matter of first impression.

---

[1]     Rule 7(b)(2) applies to amendment of an indictment before jeopardy attaches.  Tenn. R. Crim. P. 7(b)(2).  Because jeopardy attaches in a bench trial, when, *inter alia*, the witnesses are sworn, Rule 7(b)(2) is inapplicable to this case.  *See State v. Daniels*, 531 S.W.2d 795, 801–02 (Tenn. Crim. App. 1975).

- 11 -

## C. Effective Amendment

The State asserts that the defendant, through counsel, either caused or assented to an amendment of the indictment through his actions and/or inactions at trial. It maintains that the first instance occurred during and after closing arguments and that the second instance arose via the trial court's reference, in its sentencing order, to a previous conversation with both counsel about this matter. The trial court construed these actions of defense counsel to have been "an effective amendment to the indictment because the defendant actively sought to place it before the court on the uncharged offense."

At the outset, we examine the term "effective amendment" as used by the trial court and adopted by the Court of Criminal Appeals in its opinions in this case. Although cases cited herein refer to effective amendments in terms of a defendant's actively requesting a jury instruction on an otherwise improper lesser offense, this case transpired as a bench trial. Accordingly, the issue must be framed as whether the defendant actively sought consideration by the trial court of an otherwise improper offense. *See, e.g., State v. Daniels*, 531 S.W.2d 795, 801 (Tenn. Crim. App. 1975) ("To us, it is logical and compelling that the judge's role at a bench trial be considered the same as the jurors' role at a jury trial. Each, when so sitting, is acting as the trier of the facts.").

The term "effective amendment" has been utilized in Tennessee in reference to a defendant's *actively requesting* an instruction on an otherwise improper lesser offense, thereby constituting an "effective amendment." *See, e.g., State v. Williams*, 558 S.W.3d 633, 637 & n.1 (Tenn. 2018) (noting that the defendant's request for a jury instruction on aggravated assault was an "effective amendment" of the indictment because aggravated assault is not otherwise considered a lesser-included offense of aggravated rape); *Demonbreun v. Bell*, 226 S.W.3d 321, 324 (Tenn. 2007) (reiterating that an affirmative action by a defendant in seeking a jury instruction on the uncharged offense constitutes consent to an "effective amendment")[2]; *State v. Ealey*, 959 S.W.2d 605, 612 (Tenn. Crim. App. 1997) (using "consensual amendment" and "effective amendment" interchangeably when defendant requested an instruction on an offense that was not a lesser-included offense); *State v. Bentley*, No. 02C01-9601-CR-00038, 1996 WL 594076, at *2 (Tenn. Crim. App. 1996) (noting that defendant not only consented to being tried on the charge of reckless endangerment but actively sought this result, thereby resulting in "effective amendment" to his indictments).

---

[2] Additional cases not listed herein utilize the term "effective amendment" in the context of a criminal case but simply cite *Demonbreun* for the proposition.

The ordinary and plain meaning of the word "effective" is "producing a decided, decisive, or desired effect." *Effective Definition*, Merriam-Webster, https://merriam-webster.com/dictionary/effective (last visited July 1, 2019). Thus, in context, when a defendant *actively seeks* a jury instruction on an improper lesser offense, his actions produce the desired effect, *i.e.*, an amendment to the indictment. This meaning reflects intent to cause an effect. Our use of the term "effective amendment" herein incorporates that meaning.

This Court has held that an *affirmative* action by the defendant seeking a jury instruction on—or trial court consideration of— on an uncharged offense constitutes consent to an effective amendment of the indictment. *See, e.g., Demonbreun*, 226 S.W.3d at 324 (noting that "I would ask that Your Honor submit this to the jury on second degree murder and its lessers and aggravated assault and its lessers" is sufficient basis upon which to find consent to amendment) (citing *Ealey*, 959 S.W.2d at 612). Where the defendant, through counsel, "not only consented to being tried on the charge of reckless endangerment, but actively sought this result[,] . . . the defendant's actions . . . constituted consent to an effective amendment to his indictments." *Id.* at 325 (citations omitted). A defendant cannot "complain about convictions on an offense which, without his own counsel's intervention, would not have been charged to the jury." *Id.*; *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). However, if a defendant stands silent and does not lodge an objection to a trial court's proposed inclusion of a jury instruction, appellate courts "will not presume consent merely from the accused's silence." *Demonbreun*, 226 S.W.3d at 326 (internal quotation marks and citations omitted).

In *State v. Stokes*, this Court addressed an issue wherein the trial court instructed the jury on statutory rape due to its mistaken belief that statutory rape was a lesser-included offense of rape. *Stokes*, 24 S.W.3d at 306. In that case, the trial court suggested the instruction on statutory rape as a lesser-included offense, and neither the State nor the defendant objected to the court's proposed instruction. *Id.* Notably, neither party made a motion to amend the indictment, nor did the court enter an amendment to the indictment. *Id.*

In reversing the defendant's conviction, we first noted that statutory rape was not a lesser-included offense of rape. *Id.* We reiterated that "a defendant's acquiescence to a jury instruction based on an incorrect belief that an offense is a lesser[-]included offense

- 13 -

is simply insufficient to transform an erroneous jury instruction into a valid amendment of an indictment by that defendant's consent." *Id.* We then clarified the procedure for amending an indictment as set forth by Tennessee Rule of Criminal Procedure 7(b). *Id.* at 306–07 (quoting Tenn. R. Crim. P. 7(b)). This Court found that "[b]ecause no motion was made to amend the indictment, the jury should not have been instructed on statutory rape." *Id.* at 307.

Thus, based upon our case law, it is necessary to determine whether the actions of counsel resulted in an affirmative request for an instruction on reckless endangerment and was, hence, effective consent to amend the indictment, or whether his mere acquiescence at the time was insufficient to cause an effective amendment.

## 1.  Closing Arguments[3]

One of the grounds upon which the trial court relied and with which the State agreed was that defense counsel, in his closing argument, affirmatively requested that the trial court consider reckless endangerment in its deliberation.

The defendant stated, in closing arguments, that his conduct could not rise to the level of reckless endangerment, a lesser-graded criminal offense, because shooting a gun into a treetop did not satisfy the element of "imminent" danger for that offense. By implication, therefore, he suggested that the evidence could not rise to the level of proof required for aggravated assault because the statute required a showing of "fear of *imminent* bodily injury." A fair reading of the defendant's closing argument is that he was utilizing grammatical devices such as compare/contrast and analogy to make the point that if the evidence does not rise to B (reckless endangerment, a Class E felony), then it certainly cannot rise to the level of A (aggravated assault, a Class C felony). This argument does not equate with a request for the trial court to consider the unindicted offense of felony reckless endangerment.

As stated *supra*, the trial court also noted after closing arguments that defense counsel had "raised issues about . . . a lesser offense like reckless endangerment."

---

[3]  This sub-issue dispenses with the three grounds propounded by the trial court that the defendant could not complain about his conviction because they all arose during closing arguments:  1) counsel raised the issue of whether the conduct could be a lesser-included offense like reckless endangerment; 2) counsel did not object when the trial court stated that it would take the matter under advisement to consider lesser-included offenses like reckless endangerment; and 3) counsel submitted two cases, both involving reckless endangerment, for the court to consider.

However, the court qualified that statement by saying it was not raised "in this direct discussion." Absent a clear reference otherwise, it is plausible, if not probable, that the trial court was referring to the defendant's closing argument as opposed to the "direct discussion" that occurred immediately after closing arguments and just prior to adjournment. This interpretation is buttressed by the trial court's statement encouraging defense counsel to submit the two cases to which he had referred during his closing argument, "in terms of imminent danger."

In sum, the defendant chose to focus on negating the element of "imminent" in his closing argument. To that end, he cited two cases explaining the concept of "imminent" as it applied to the "imminent danger" of reckless endangerment rather than the "imminent bodily injury" embodied in aggravated assault. The trial court's request for copies of the cases regarding "imminent danger" seemingly communicated an understanding of the defendant's argument. To that end, it was unclear that the trial court would consider reckless endangerment as a lesser-included offense, and an objection was unwarranted. The defendant did not seek or agree to an amendment to the indictment through the argument of counsel.

2. Alleged Off-the-Record Conversation

In addition to the trial court's mention of a "direct discussion" following closing arguments, a footnote to the trial court's order stated, "Both the Assistant District Attorney and defense counsel discussed with the Court whether the facts merited a finding as to reckless endangerment versus aggravated assault." It is unclear whether the trial court referred to the brief dialogue at the end of closing arguments or to some other unrecorded conversation. If it is the former, this issue was addressed above. If it is the latter, we address it herein.

The Tennessee General Assembly has conferred upon criminal defendants in a felony trial the right to have a court reporter present "to record verbatim all proceedings that occur in open court and such other proceedings as the judge may direct." Tenn. Code Ann. § 40-14-317. Without question, a conversation regarding whether counsel either caused or acquiesced to an amendment of an indictment is a critical conversation that should have been conducted on the record and in the presence of a court reporter. Upon consideration of the defendant's first application for permission to appeal to this Court, we remanded the matter to the Court of Criminal Appeals and ordered that the record on appeal be supplemented with the entire transcript of the bench trial. The complete record from the trial court was transmitted to the Court of Criminal Appeals. After thorough examination of the record, no such conversation concerning felony

- 15 -

reckless endangerment as a lesser-included offense of aggravated assault can be found in the transcripts.

"'When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal.'" *State v. Clayton*, 535 S.W.3d 829, 848 (Tenn. 2017) (quoting *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993)). The issue in this case does not turn on the defendant's failure to provide a complete record on appeal. This Court ordered that the record be supplemented with the entire record. This conversation does not exist *on the record*. While we do not imply that the trial court acted with anything other than integrity, we disagree with the Court of Criminal Appeals and will not "presume the correctness of the trial court's determination that the conversations not contained in the record included the Defendant actively seeking consideration of reckless endangerment as a lesser-included offense." *Myers I*, 2016 WL 6560014, at *5.

This approach is consistent with our prior opinion in *Stokes*. As briefly explained *supra*, in *Stokes*, the trial court erroneously instructed the jury that it could consider an improper lesser offense. 24 S.W.3d at 306. In this case, the trial court, in a bench trial, considered an improper lesser offense. In *Stokes*, the State failed to move to amend the indictment to reflect the trial court's proposed jury instructions. *Id.* In this case, the State failed to so move. In *Stokes*, the trial court did not enter an amendment to the indictment. *Id.* Neither did the trial court in this case enter an amendment. In *Stokes*, an instruction on an improper lesser offense was suggested by the trial court. *Id.* Here, the trial court stated, without a *clear* request from counsel, that it would consider an improper lesser offense. In *Stokes*, neither the State nor the defendant objected to the court's proposed instruction. *Id.* Arguably, neither party objected to the trial court's consideration of felony reckless endangerment as a lesser offense in this case.

In holding that "a defendant's acquiescence to a jury instruction based on an incorrect belief that an offense is a lesser[-]included offense is simply insufficient to transform an erroneous jury instruction into a valid amendment of an indictment by that defendant's consent," this Court noted that Tennessee Rule of Criminal Procedure 7(b) did "not specify the procedure by which the amendment should be made." *Id.* The *Stokes* Court stated:

> To clarify this matter, we conclude that an indictment may be amended pursuant to Rule 7(b) where an oral or written motion to amend the indictment is made and where the defendant's oral or written consent to the

- 16 -

motion is clear from the record. Because no motion to amend the indictment was made in the present case, and consent by Stokes to such an amendment does not appear in the record, we hold that the indictment was not amended. Accordingly, Stokes was convicted of a crime for which he was not charged.

*Id.* at 306–07. We again reiterate that the proper procedure for properly amending an indictment requires that an oral or written motion to amend be made and the defendant's oral or written consent to the amendment be *clear* from the record. The term "effective amendment" embodies intent to cause an effect. If the mandates of Rule 7(b)(1) and *Stokes* are strictly followed, one could not "inadvertently" cause an effective amendment. The facts in this case do not support an effective amendment to the defendant's indictment.

### 3. Waiver

Having concluded that the defendant's actions did not constitute a request for trial court consideration of felony reckless endangerment and, therefore, an effective amendment to the indictment, we next consider the State's argument that the defendant waived appellate review of this issue. Operating on the presumption that an off-the-record conversation occurred, the State asserts that the defendant waived this issue because he failed to object either time the trial court mentioned that it intended to consider felony reckless endangerment as a lesser-included offense.

Notwithstanding any conversations that may or may not have taken place and any opportunities defense counsel had or did not have to object, Rule 30(b) of the Tennessee Rules of Criminal Procedure provides that failure to make objection to the content of an instruction, or in this case, a remark by the court in a bench trial that it intends to consider a particular offense, "does not prejudice the right of a party to assign the basis of the objection as error in a motion for a new trial." Tenn. R. Crim. P. 30(b). While "[i]t is true that where the defendant affirmatively requests a particular jury instruction on [or consideration of] an offense not charged in the indictment, erroneously believing that offense to be a lesser-included offense of the charged crime, the defendant is deemed to have consented to an amendment of the indictment," *State v. Davenport*, 980 S.W.2d 407, 409 (Tenn. Crim. App. 1998), we will not presume consent merely from the accused's silence, *Demonbreun*, 226 S.W.3d at 326. At most, the defendant's failure to raise this issue at the trial court level amounts to his mere acquiescence in the trial court's consideration of felony reckless endangerment. *See Stokes*, 24 S.W.3d at 306. We decline to interpret defense counsel's closing argument or his failure to address the trial

court's comments as a request for consideration of felony reckless endangerment or a valid motion to amend the indictment.

Failure to object to the content of an instruction "does not prejudice the right of a party to assign the basis of the objection as error in a motion for a new trial."[4]  Tenn. R. Crim. P. 30(b).  Although this is couched in terms of a motion for a new trial, a motion for new trial was not required in this case because the trial was a bench trial.  *See* Tenn. R. App. P. 3(e) (providing that prior to initiating an appeal as of right, defendants must file a motion for new trial "in all cases tried by a jury").  However, the defendant raised the issue in a motion for judgment of acquittal.  To the extent that a motion for new trial is necessary to preserve error for appellate review, this requirement is obviously inapplicable to bench trials.  Although it was not necessary, the defendant nevertheless adequately preserved his objection by filing a motion for judgment of acquittal,[5] and he is thus entitled to plenary review.

## D. Application

Upon our review, we hold that the defendant's indictment was not properly amended either in accordance with our rules of criminal procedure or applicable case law.  His conviction was not predicated on a valid indictment, a lesser-included offense of the indicted offense, or a proper amendment of the indictment and is, therefore, a nullity.  Therefore, the conviction must be reversed and the charges against the defendant dismissed.

---

[4]  Tennessee Code Annotated section 40-18-110(d) states, in part, that "[i]f the defendant fails to object to a lesser-included offense instruction, the inclusion of that lesser-included offense instruction may not be presented as a ground for relief either in a motion for a new trial or on appeal."  To be clear, that statute is not implicated by the facts of this case.

[5]  In a jury trial, courts typically hold a conference with both counsel to discuss the jury instructions, particularly which lesser-included offenses the court will permit the jury to consider.  In a bench trial, a "charge conference" does not usually occur.  Adopting the practice of holding some variation of a charge conference with counsel on the record prior to a trial court's deliberating would alleviate issues such as this issue presented in this case.  This is especially important in terms of clarifying whether a defendant has actively pursued an instruction on an offense that is not a lesser-included offense of the indicted offense.

**CONCLUSION**

The trial court erred by finding that the defendant caused an effective amendment to the indictment in this case. By considering an improper lesser offense in the absence of a proper amendment, the trial court committed reversible error. The Court of Criminal Appeals also erred by affirming the judgment of the trial court. The defendant's conviction for felony reckless endangerment is reversed, the judgment is vacated, and this case is dismissed.

_____
ROGER A. PAGE, JUSTICE